# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KACEY LEWIS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:17cv1764(VLB) |
| | : | |
| SCOTT ERFE, ET AL., | : | |
| Defendants. | : | March 30, 2020 |

### <u>RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

Plaintiff, Kasey Lewis, is currently incarcerated at Garner Correctional Institution. He initiated this action by filing a civil rights complaint against Warden Scott Erfe, Deputy Warden Robert Martin, Freedom of Information Act ("FOIA") Liaison Michelle King, Nurses Kate Barnas,[1] Alan Wood and Sarah Baker and Lieutenants Champion, Colvin, Perez and Hackett regarding his placement on in-cell restraints at Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski" for almost three days due to his refusal to submit to a visual body cavity strip search in October 2017. The parties have filed cross-motions for

---

[1] **Plaintiff listed Nurse Kate Barnas as Kate Barnes in the complaint.** *See* **Compl., Doc No. 1, at 1-2. The Clerk was unable to serve the complaint on Barnes because the Department of Correction Legal Affairs office had no record of a Kate Barnes working at Corrigan-Radgowski in October 2017. The Court instructed Plaintiff to provide the correct name of Nurse Barnes to the Clerk. Upon the filing of Defendants' motion for summary judgment, it became clear that Nurse Kate Barnes was in fact Nurse Kate Barnas.** *See* **Ex. R, Doc. No. 56-21, at 4. On December 30, 2019, the Court directed the Clerk to attempt to effectuate service of the complaint on Defendant Kate Barnas at her last known address.** *See* **Order, Doc. No. 93, at 4-5, 13. On January 3, 2020, the Clerk sent a copy of the complaint, the IRO and waiver of service of summons forms to the Department of Connecticut Legal Affairs office to be forwarded to Kate Barnas at her last known address.**

summary judgment. For the reasons set forth below, the defendants' motion will be denied in part and granted in part and Plaintiff's motion will be denied.

I. <u>Procedural Background</u>

On October 23, 2018, the Court reviewed the complaint in accordance with 28 U.S.C. § 1915A(b) and dismissed all official capacity claims asserted against the Defendants, the FOIA and First Amendment claims against Liaison King in her individual capacity, the First Amendment and all other federal constitutional and federal statutory claims against Warden Erfe and Deputy Warden Martin in their individual capacities and the Eighth Amendment claims of deliberate indifference to medical needs, health and safety against Nurse Wood in his individual capacity pursuant to 28 U.S.C. § 1915A(b)(1). *See* IRO, Doc. No. 11, at 21. The Court permitted the following claims to proceed against the remaining defendants in their individual capacities: the Eighth Amendment claims of excessive force against Lieutenants Perez, Hackett, Champion and Colvin and Warden Erfe, the Eighth Amendment claim of deliberate indifference to medical needs against Nurses Barnas and Baker and the Eighth Amendment claims of deliberate indifference to health and safety against Nurses Baker and Barnes, Lieutenants Perez, Hackett, Champion and Colvin and Warden Erfe. *Id.* at 21-22.

Defendants Erfe, Baker, Champion, Colvin, Perez and Hackett have appeared and have filed an answer to the complaint. Both Plaintiff and Defendants Erfe, Baker, Champion, Colvin, Perez and Hackett have moved for summary judgment on all remaining claims.

## II.   Standard of Review

When filing a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017) (citations omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party may satisfy its burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curium*) (internal quotations and citations omitted).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and… draw all reasonable inferences in

its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment and the district court granted one motion but denied the other." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (citation omitted). Even if "both parties contend that there are no genuine issues of material fact [in dispute]" a district court "is not bound to enter judgment for either of the parties, because th[e] court may discern material factual disputes on its own." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019) (citing Morales, 249 F.3d at 121).

The court reads a *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly

supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

III.     <u>Facts</u>[2]

As of October 24, 2014, Plaintiff was a sentenced inmate within the custody of the State of Connecticut Department of Correction. Defs.' Corrected L.R. 56(a)1 ¶ 1. On that date, prison officials at MacDougall-Walker Correctional Institution transferred Plaintiff to Corrigan-Radgowski. *Id.* ¶ 2. Plaintiff arrived at Corrigan-Radgwoski at approximately 8:00 p.m. *Id.* ¶ 3; Ex. R, Incident Report at 1, Doc. No. 56-21. Scott Erfe was the Warden at Corrigan-Radgowski from July 2010 until November 2014. Ex. B, Erfe Aff. ¶ 3, Doc. No. 56-5.

Having been transferred between correctional facilities, Plaintiff was required to undergo a strip search upon his arrival at Corrigan-Radgowski pursuant to State of Connecticut Administrative Directive 6.7(7)(A)(1) & (4), Searches Conducted in Correctional Facilities, Inmate Strip-Searches When Reasonable Suspicion is not Required. Defs.' Corrected L.R. 56(a)1 ¶ 3. Administrative Directive 6.7 defines a strip search as "a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair,

---

[2] The relevant facts are taken from the Defendants' Corrected Local Rule 56(a)1 Statement ("Defs.' Corrected L.R. 56(a)1"), [Doc. No. 78], Exhibits B through G and R, [Doc. Nos. 56-5 through 56-10, 56-21], Ex. S, [Doc. No. 57] (Plaintiff's Medical Records filed under Seal) and Exs. H-P, Q, [Doc. No. 58] (DVDs filed under Seal), that are referenced in the Corrected Local Rule 56(a)1 Statement. The facts are also taken from Pl.'s Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2"), [Doc. No. 77-2], filed in opposition to Defendants' motion for summary judgment, Exhibits 1-4, [Doc. Nos. 77-3 through 77-6], Pl.'s Local Rule 56(a)1 Statement ("Pl.'s' L.R. 56(a)1"), [Doc. No. 54-2], filed in support of his own

body cavities []to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. . . . [and] a physical search of the clothing and any personal effects." *Id.* ¶ 4; Ex. E, Admin. Directive 6.7(3)(Q), Doc. No. 56-8.

A correctional officer escorted Plaintiff to the shower area in the admitting and processing area for a strip search. Ex. R at 1, 3, 11, Doc. No. 56-21. As part of the visual body cavity strip search, the officer instructed Plaintiff to bend over at the waist and spread his buttocks to permit the officer to view Plaintiff's rectal area. Pl.'s Dep. at 30:10 – 31:1, Doc. No. 77-4. Plaintiff refused to engage in this part of the strip search process. *Id.*; Defs.' Corrected L.R. 56(a)1 ¶ 5. After securing Plaintiff in handcuffs, an officer placed Plaintiff in a holding cell in the admitting and processing area and summoned Lieutenant Perez. Defs.' Corrected L.R. 56(a)1 ¶ 5.

Compliance with all aspects of the strip search process, including a visual inspection of the rectal area to rule out the possibility that an inmate has dangerous contraband secreted in that area, is important to preserving the safety and security of the prison facility, prison staff members and other inmates. *Id.* ¶ 6. Upon his arrival at Plaintiff's cell in the admitting and processing area, Lieutenant Perez spoke to Plaintiff and attempted to gain his compliance with the strip search order requiring him to bend over at the waist and spread his buttocks to permit an officer to view his rectal area. *Id.* ¶ 7. Plaintiff informed Lieutenant

---

motion for summary judgment and Plaintiff's notarized Complaint, [Doc. No. 1].

Perez that he had already stripped and had performed the squat and cough portion of the strip search twice in front of another officer before Lieutenant Perez arrived and that any visual inspection of his rectum would require the use of force by prison officials because he was not going to voluntarily bend over and expose his rectum. *Id.* ¶¶ 8-9; Ex. H, DVD, Oct. 24, 2014, at 3:45 – 4:20; Pl.'s Decl. ¶ 8, Doc. No. 77-3.

Because Plaintiff would not agree comply with the strip search order requiring a visual inspection of his rectal area, Lieutenant Perez directed several officers to enter Plaintiff's cell and apply in-cell restraints to his ankles, wrists and waist. Defs.' Corrected L.R. 56(a)1 ¶¶ 9-10. In-cell restraints are defined in Administrative Directive 6.5 as "Restraint within a cell of an acutely disruptive inmate utilizing one or more of the following restraining devices as appropriate: handcuffs, leg irons, security (tether) chain, belly chains, flex cuffs and/or black box." *Id.* ¶ 11; Ex. D, Admin. Directive. 6.5(3(F), Doc. No. 56-7. In-cell restraints typically include handcuffs applied to the inmate's wrists in the front of his body, leg irons applied to the inmate's ankles and a tether chain connected between the leg irons and the handcuffs. Defs.' Corrected L.R. 56(a)1 ¶ 14. The tether chain must be long enough to permit the inmate to stand upright. *Id.* In-cell restraints may be used by prison officials when an inmate refuses a direct order, such as an order to undergo a strip search as required by Administrative Directive 6.7. *Id.* ¶ 15.

The black box device is a small metal or plastic device that is fitted over the

keyholes in the handcuffs to prevent an inmate from picking the locks securing the handcuffs. *Id.* ¶ 12. When applied, the black box forms a rigid link between the cuff on each wrist. *Id.* If the black box is not applied to cover the key holes in the handcuffs, the inmate is free to turn his hands and wrists and could manipulate the handcuffs or pick the locks securing the handcuffs to his or her wrists. *Id.* ¶ 13.

A controlled strip search is defined as a "strip-search in which Department personnel maintain physical, hands on control of an inmate through the use of restraints or approved restraint techniques for the purposes of safety and security." Ex. E at 2, Admin. Directive 6.7(3)(F). A prison staff member may conduct a hands-on controlled strip search of an inmate for various reasons including when an "inmate refuses to comply with a strip search as defined in Section 3(Q) of . . . Directive [6.7]." Id. 6.7(7)(D)(1). A controlled strip search, which requires staff members to put their hands on an inmate, may expose staff members and the inmate who is being searched to injury. Defs.' Corrected L.R. 56(a)1 ¶ 16.

Pursuant to the order of Lieutenant Perez, on October 24, 2014, officers placed handcuffs on Plaintiff's wrists and leg irons around his ankles, attached a tether chain between the handcuffs and the leg irons and applied the black box device over the handcuffs. Defs.' Corrected L.R. 56(a)1 ¶ 18. The application of in-cell restraints, including the black box device, ensures that an inmate's hands and wrists are restricted and limit his or her ability to access any contraband

items that may be in his or her rectum. *Id.* ¶ 19. At approximately 9:15 p.m., after applying the in-cell restraints to Plaintiff's limbs, officers, under the supervision of Lieutenant Perez, escorted Plaintiff to a cell in the restrictive housing unit. *Id.* ¶ 20.

Lieutenant Perez returned to the restrictive housing unit at 9:59 p.m. and spoke to Plaintiff. *Id.* ¶ 22. Plaintiff asked Lieutenant Perez for a shirt and socks and Lieutenant Perez agreed to provide those items to Plaintiff. *Id.* ¶ 23. A nurse then spoke to Plaintiff through the trap in the cell door and Plaintiff stated that he would not perform the strip search requiring him to bend at the waist and spread his buttocks because he believed that it violated his right to decency and was degrading. *Id.* ¶ 24.

The following morning, October 25, 2014, at 10:00 a.m., Nurse Baker and Lieutenant Colvin arrived at Plaintiff's cell in the restrictive housing unit to check his restraints. *Id.* ¶ 25. Later that day, at approximately 11:25 p.m. on October 25, 2014, Lieutenant Champion arrived at Plaintiff's cell to assess his restraints. *Id.* ¶ 26. Plaintiff informed Lieutenant Champion that he was experiencing pain in his wrists because the restraints were too tight. *Id.* ¶ 28. Lieutenant Champion observed that the handcuffs seemed to have moved up on Plaintiff's arms. *Id.* Lieutenant Champion escorted Plaintiff to the hallway outside of his cell, instructed officers to remove the handcuffs and permitted a nurse to treat the blisters and lacerations on Plaintiff's wrists and forearms. *Id.* ¶¶ 29-30. After the nurse had treated Plaintiff's injuries, Lieutenant Champion instructed officers to

reapply and readjust the restraints. *Id.* ¶ 29. After officers had reapplied the handcuffs and black box device to Plaintiff's wrists, Lieutenant Champion instructed the nurse to monitor Plaintiff's restraints to make sure they did not ride up on Plaintiff's forearms. *Id.* ¶ 33.

During her interaction with Plaintiff, Lieutenant Champion asked Plaintiff if he wanted to comply with the strip search process requiring him to bend at the waist and spread his buttocks. *Id.* ¶ 27; Ex. J, DVD, Oct. 25, 2014, at 0:35 – 1:01. Plaintiff indicated that he would do the squat and cough search but would not bend at the waist and spread his buttocks. *Id.*

Later that night, at approximately 1:00 a.m. on October 26, 2014, Lieutenant Hackett visited Plaintiff's cell to conduct a check of Plaintiff's restraints. *Id.* ¶ 36. Lieutenant Hackett removed the restraints and took photographs of the injuries on Plaintiff's wrists. *Id.* ¶ 37.

The following morning, October 26, 2014 at approximately 10:00 a.m., Lieutenant Colvin entered Plaintiff's cell to conduct a restraint check. *Id.* ¶ 38. Lieutenant Colvin asked Plaintiff if he would comply with the strip search process requiring him to bend at the waist and spread his buttocks. *Id.*; Ex. J, DVD, Oct. 26, 2014, at 0:40 – 4:10. Plaintiff indicated that he understood the strip search policy described in Administrative Directive 6.7, but he would not bend at the waist and spread his buttocks as part of the strip search because doing so would violate his right to bodily privacy. *Id.*

Officers removed the restraints from Plaintiff's wrists and Nurse Baker

cleaned Plaintiff's injuries and applied new bandages to the injured areas. *Id.* ¶ 41. Officers reapplied the handcuffs and black box device to Plaintiff's wrists and Nurse Baker and Lieutenant Colvin checked the leg irons and handcuffs to ensure that there was ample space between the restraints and Plaintiff's ankles and wrists. *Id.* ¶ 43. Nurse Baker informed the Plaintiff that she thought the blisters on his wrists and arms would open up again if he remained in handcuffs and the black box device and encouraged Plaintiff to agree to the visual cavity strip search because it was her understanding that officers would remove the in-cell restraints if he did so. *Id.* ¶ 44. Lieutenant Colvin informed Plaintiff that he could notify an officer if he changed his mind about undergoing the strip search that involved bending over and spreading his buttocks to permit a visual inspection of his rectal area. *Id.*

At approximately 11:30 a.m. on October 26, 2014, Lieutenant Colvin informed Warden Erfe that Plaintiff was continuing to refuse to comply with the strip search order and that he and Nurse Baker had observed injuries on Plaintiff's wrists that had been caused by the in-cell restraints. *Id.* ¶ 45. Warden Erfe instructed Lieutenant Colvin to remove the in-cell restraints from Plaintiff's limbs and waist, including the black box device, and to transition Plaintiff to full stationary restraints in order to prevent further harm to Plaintiff from the in-cell restraints and to ensure the safety and security of staff members and the facility. *Id.* ¶¶ 46, 48. A Full Stationary Restraint is defined as "[s]ecuring an inmate by the four (4) points of the arms and legs to a stationary surface" using soft, wide

and flexible straps. *Id.* ¶ 46; Ex. D, Admin. Directive. 6.5(3)(E) & 8(C)(2), Doc. No. 56-7.

At approximately 1:00 p.m., Lieutenant Colvin and Nurse Baker entered Plaintiff's cell and Lieutenant Baker asked Plaintiff if he would agree to the strip search requiring him to bend at the waist and spread his buttocks. *Id.* ¶ 49; Ex. L, DVD, Oct. 26, 2014, at 1:00 – 1:10. Plaintiff indicated that he would not agree to do so. *Id.* Lieutenant Colvin supervised officers while they removed the in-cell restraints from Plaintiff's limbs and then secured Plaintiff to the bed frame using straps attached to his ankles and wrists. *Id.* ¶ 50. Before officers applied the full stationary restraints, Nurse Baker removed the bandages from Plaintiff's wrists, cleaned his wounds, applied fresh bandages and gave him medication to treat the pain and swelling in his wrists. *Id.* ¶ 51. Nurse Baker checked the full stationary restraints and noted that one restraint was too tight. *Id.* ¶ 52. An officer adjusted that restraint. *Id.*

Plaintiff remained in full stationary restraints until approximately 11:30 a.m. on October 27, 2014. *Id.* ¶ 54. On eleven occasions during Plaintiff's 22-hour confinement on stationary restraints, medical staff members visited Plaintiff's cell to treat Plaintiff's injuries and assess the restraints, and correctional staff members permitted Plaintiff to engage in range of motion exercises and adjusted and reapplied the restraints on his four limbs. *Id.* ¶ 55.

At some point during the morning of October 27, 2014, Warden Erfe visited Plaintiff to check on his status. *Id.* ¶ 57. Later that morning, Warden Erfe

instructed Lieutenant Colvin to perform a controlled strip search on Plaintiff because he thought is was in the best interest of Plaintiff to remove him from full restraints and the best interest of the facility to determine whether Plaintiff had any contraband in his rectal area. *Id.* ¶ 58.

Prior to performing the controlled strip search on Plaintiff, Lieutenant Colvin asked Plaintiff if he would agree to undergo the strip search that required him to bend over and spread his buttocks. *Id.* ¶ 60; Ex. Q, DVD, Oct. 27, 2014, at 11:00 – 11:35, 17:00 – 17:35. Plaintiff indicated that he would not. *Id.* From approximately 11:15 a.m. to 11:30 a.m. on October 27, 2014, Lieutenant Colvin supervised four officers as they performed a controlled strip search on Plaintiff in the restrictive housing unit. *Id.* ¶¶ 59, 62; Ex. Q, DVD, Oct. 27, 2014, at 29:40 – 37:30. Plaintiff fully cooperated with the search and the officers found no contraband. *Id.* ¶ 62; Ex. R at 42-49, Doc. No. 56-21. After the search, Lieutenant Colvin ordered officers to remove all restraints from Plaintiff's limbs. *Id.*

IV.    Discussion

Defendant Baker argues that she was not deliberately indifferent to Plaintiff's medical needs or his health or safety, Defendants Perez, Hackett, Champion, Colvin and Erfe argue that they were not deliberately indifferent to Plaintiff's health or safety and did not use excessive force against Plaintiff and all of the Defendants argue that they are entitled to qualified immunity. In support of his own motion for summary judgment, Plaintiff submitted a declaration that essentially mirrored the allegations in the complaint. *See* Decl., Doc. No. 54-3.

He argues that he is entitled to summary judgment because the Defendants cannot dispute the facts asserted in the complaint. In opposition to the Defendants' motion, Plaintiff initially argued that it was untimely. *See* Doc. No. 60. In his second response, Plaintiff argues that the Defendants are not entitled to judgement as a matter of law or qualified immunity as to the claim of deliberate indifference to a serious risk of harm. *See* Doc. No. 77.

Pursuant to the deadlines set forth in the Initial Review Order, [Doc. No. 11], discovery was to be completed within six months and motions for summary judgment were to be filed within seven months. Defendants filed their motion for summary judgment on May 23, 2019. Given that the Clerk set the deadline for filing summary judgment motions as May 23, 2019, the Defendants' motion was not untimely. *See* Defendants' Resp. Obj., Doc. No. 62, at 5.

At the end of his memorandum in opposition to the Defendants' motion for summary judgment, Plaintiff includes a statement indicating that facts essential to justify his opposition are unavailable to him. *See* Pl.'s Mem. Opp'n Mot. Summ. J. at 9 (citing Rule 56(d), Fed. R. Civ. P.), Doc. No. 77-1. In support of this contention, Plaintiff claims that he did not receive Exhibit S that Defendants filed in support of their motion for summary judgment. The court has placed Exhibit S, which contains copies of medical incident reports pertaining to treatment provided to Plaintiff, under seal. *See* Doc. No. 57.

Rule 56(d), Fed. R. Civ. P. requires that the party seeking relief "show by affidavit or declaration, that, for specified reasons, it cannot present facts

essential to justify its opposition. . . ."  *Id.*  On June 12, 2019, in response to Plaintiff's Notice that he had not received the documents designated as Exhibit S, Defendants' counsel represented to the Court that he had remailed Exhibit S to Plaintiff at his current address.  *See* Doc. No. 74. Plaintiff has not otherwise informed the Court that he did not receive the documents designated as Exhibit S in support of Defendants' motion for summary judgment.  Nor has he filed a declaration or affidavit pursuant to Rule 56(d), Fed. R. Civ. P. indicating that he is unable to present evidence or facts that are "essential to justify [his] opposition" to Defendants' motion for summary judgment.  *Id.*  Given that Counsel for the Defendants remailed a copy of the documents designated and placed under seal as Exhibit S to Plaintiff and Plaintiff has not informed the court that he did not received the documents, there is no basis to defer considering or to deny the Defendants' motion for summary judgment pursuant to Rule 56(d)(1), Fed. R. Civ. P.

A.  <u>Deliberate Indifference to Medical Needs</u>

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To state a claim for deliberate indifference to a serious medical need, two requirements must be met.  Under the objective prong, the inmate's medical need or condition must be "a serious one."  *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003) (citations omitted).  In determining the seriousness of a medical condition or need, district

courts should consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second prong is subjective. Under this prong, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of serious harm to the inmate. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Mere negligent conduct does not constitute deliberate indifference. *See id.* at 280 (reckless indifference "entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Plaintiff alleges that on October 26, 2014, Nurse Baker was deliberately indifferent to his serious medical needs when she failed to treat the injuries that he had suffered to his wrists and arms from wearing tight handcuffs and the black box device. Nurse Baker initially argues that Plaintiff's injuries were not serious enough to meet the objective component of the Eighth Amendment standard.

Plaintiff declares that his injuries involved more than just bruises and scrapes and were painful. The video footage of Plaintiff's arms on October 26, 2014 reflects that the handcuffs had cut into Plaintiff's skin and had caused

blisters and swelling. *See* Ex. K, DVD, Oct. 26, 2014, at 7:45 – 9:00. In addition, the injuries were worthy of comment and treatment by a medical provider. *See id.* at 9:00 – 10:25, 12:20 – 14:00. The court concludes that there is a genuine issues of material fact in dispute as to whether the injuries caused by the restraints were serious enough to meet the objective component of the Eighth Amendment standard.

The evidence presented by Nurse Baker reflects that she did not ignore Plaintiff's injuries. Instead, the video footage depicts Nurse Baker cleaning and applying antibiotic ointment to Plaintiff's wounds and then covering the wounds with bandages. *See id.* at 7:05 – 9:00; 12:20 – 14:00. In addition, the video footage of Nurse Baker's visit with Plaintiff at 1:30 p.m. on October 26, 2014, reflect that she provided treatment to Plaintiff's injuries and addressed his medical complaints in a similar manner. *See* Ex. L, DVD, Oct. 26, 2014, at 15:1616, 17:30 – 18:30, 19:28 – 20:00, 27:15 – 27:53. Plaintiff has provided no evidence to dispute the video footage of the interactions between himself and Nurse Baker on October 26, 2014 or the treatment provided by Nurse Baker. The court concludes that Nurse Baker has demonstrated the absence of a material fact in dispute with regard to whether she was deliberately indifferent to Plaintiff's medical needs on October 26, 2014. The Defendants' motion for summary judgment is granted as to this Eighth Amendment claim against Nurse Baker and the Plaintiff's motion for summary judgment is denied.

B.     Deliberate Indifference to Health or Safety

The Supreme Court has held that to the extent that a prisoner's conditions of confinement are "restrictive or even harsh," they do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he or she faced a substantial risk to his or her health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837.

Plaintiff has asserted three different deliberate indifference to health and safety claims against the defendants. He contends that Lieutenant Perez was deliberately indifferent to his health by failing to provide him with a shirt, socks and bed linens during his initial placement in in-cell restraints on October 24, 2014, Warden Erfe was deliberately indifferent to his health because officers did not adequately feed him during his confinement on in-cell restraints and Lieutenants Perez, Hackett, Champion and Colvin, Warden Erfe and Nurse Baker

were deliberately indifferent to his health/safety when they either failed to inspect or check the restraints and/or continued to reapply the in-cell restraints even though he had suffered injuries to his forearms/wrists and had experienced pain and sleep deprivation due to his confinement in the restraints.

### 1. Lieutenant Perez

Plaintiff alleges that during the application of in-cell restraints on October 24, 2017, officers dressed him in boxer shorts and a jumpsuit but did not provide him with a shirt or socks.  About an hour after officers escorted Plaintiff to a cell in the restrictive housing unit, Lieutenant Perez visited him.  At that time, Plaintiff asked for a shirt and socks and Lieutenant Perez indicated that he would provide those items of clothing to Plaintiff.

The video footage of the restraint check performed at approximately 11:20 p.m. on October 25, 2014 depicts Plaintiff in a shirt and a jumpsuit.  In addition, it is evident that Plaintiff's his shoes were by his bunk.  *See* Ex. J, DVD, October 25, 2014, at 0:35 – 15:45; 16:00 – 16:20.  Plaintiff did not complain that he was cold or that he needed socks or bed linens.  *Id.*  The video footage of the restraint check performed at approximately 10:00 a.m. on October 26, 2014 depicts Plaintiff in a shirt, a jumpsuit and socks and bed linens on his bunk.  *See* Ex. K, DVD, October 26, 2014, at 0:40 – 5:00; 15:28 – 16:04; 18:20 – 18:25.

Although Plaintiff states that he was cold during the short time that he did not have a shirt and socks, courts have held that exposure to cold temperatures for short periods of time do not violate the Eighth Amendment.  *See, e.g., Borges*

*v. McGinnis,* No. 03–CV–6375, 2007 WL 1232227, at *2, 6 (W.D.N.Y. Apr. 26, 2007) (granting defendants' motion for summary judgment where the plaintiff alleged he suffered nothing "more than frustration and discomfort as a consequence of the [fifty degree temperature] in his cell" for three days); *Smith v. Burge,* No. 03–CV– 0955, 2006 WL 2805242, at *7 (N.D.N.Y. Sept. 28, 2006) (Kahn, J.) (finding, on summary judgment, that plaintiff's allegations of being deprived of "various property (except for a T-shirt and underwear) for less than one day while confined to a cell that was 'cold' or 'very cold' due to some gallery windows being open in late-March in Auburn, New York" insufficient to rise to the level of an Eighth Amendment violation); *Davis v. Buffardi,* No. 01–CV–0285, 2005 WL 1174088, at *2 (N.D.N.Y. May 4, 2005) (Magnuson, J.) (granting the defendants' motion for summary judgment where the plaintiff had failed to adduce any evidence that, during the ten-day period in February when the prison facility's boiler broke down and the plaintiffs were allegedly denied extra blankets and clothing, the temperature in the facility was so cold that the plaintiffs experienced substantial harm); *McNatt v. Unit Manager Parker*, No. 3:99CV1397(AHN), 2000 WL 307000, *4 (D. Conn. 2000) (no Eighth Amendment violation where the plaintiff was denied, *inter alia*, "clean clothing, toiletries, bedding and cleaning supplies for six days").   Here, Plaintiff was without a shirt for at most 26 hours and was without socks and bed linens for at most thirty-six hours.

The court concludes that Plaintiff has failed to submit evidence to demonstrate that he suffered a serious deprivation of a basic human need as a

result of Lieutenant Perez's failure to provide him with a shirt for at most twenty-six hours and failure to provide him with socks and bed linens for at most thirty-six hours. The Defendants' motion for summary judgment is granted on the ground that Lieutenant Perez did not subject Plaintiff to unconstitutional deprivations of a basic human need during his confinement on in-cell restraints from October 24, 2014 to October 26, 2014 and the Plaintiff's motion for summary judgment is denied.[3]

### 2. Nurse Baker and Lieutenant Colvin – October 25, 2014

Plaintiff declares that Nurse Baker and Lieutenant Colvin came to his cell on October 25, 2014 to check his restraints but made no attempt to conduct a restraint check even though Plaintiff informed Nurse Baker that the restraints were too tight, he was experiencing pain from the restraints and his hands, wrists and forearms were swollen. Pl.'s Decl. ¶¶ 14-15, Doc. No. 77-3; Pl.'s Dep. 57:15 – 60:1, Doc. No. 77-4. During the restraint check, Lieutenant Colvin stood at the cell door while Nurse Baker entered Plaintiff's cell, looked at the restraints and said they were fine. *Id.* Plaintiff contends that the in-cell restraints, including the

---

[3] In opposition to the Defendants' motion for summary judgment, Plaintiff contends that Lieutenant Perez violated State of Connecticut Administrative Directive 6.5 which provides that an inmate shall be provided with a shirt, socks and bed linens as well as jumpsuit tied around the waist when placed on in-cell restraint status. See Pl.'s Mem. Opp'n Mot. Summ. J. at 4, [Doc. No. 77-1]. This allegation is not included in the complaint and does not state a claim that Lieutenant Perez violated Plaintiff's federal statutory or constitutional rights. A violation of state law does not state a claim of a violation of an inmate's federally or constitutionally protected rights. *See Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) ("failure to comply with a state law or administrative directive does not by itself establish a violation of § 1983") (citing *Doe v. Connecticut*

black box device, constituted a condition that exposed him to a risk of serious harm and that in fact he suffered serious injuries to his forearms/wrists from the application of restraints as well as permanent scarring in those areas.

Nurse Baker has submitted a Medical Incident Report, dated October 25, 2014 at 10:00 a.m., that includes notations that she inspected Plaintiff's wrists after removing the restraints, Plaintiff did not complain of any injuries, Nurse Baker observed no injuries and she did not provide any treatment because it was unnecessary. *See* Ex. S at 2. Nurse Baker has provided a Declaration in which she confirms that the October 25, 2014 Medical Incident Report includes accurate representations of her actions and the observations that she made during her medical assessment of Plaintiff on that date. *See* Baker Decl. ¶¶ 9-10, Doc. No. 56-10. Neither the defendants, nor Plaintiff have submitted video footage of this interaction between Plaintiff, Nurse Baker and Lieutenant Colvin.

The parties have submitted conflicting evidence as to whether the in-cell restraints posed a serious risk of harm to Plaintiff's health at the time that Nurse Baker and Lieutenant Colvin came to inspect the restraints at 10:00 a.m. on October 25, 2014. The court concludes that Nurse Baker and Lieutenant Colvin have failed to demonstrate the absence of a material fact in dispute regarding whether Plaintiff suffered from a serious risk of harm to his health at the time that they came to his cell for a restraint check at 10:00 a.m. on October 25, 2014. Because Nurse Baker states that she provided no treatment to Plaintiff on that

*Department of Child & Youth Services,* 911 F.2d 868, 869 (2d Cir. 1990)).

date, a genuine issue of material fact exists as to whether she or Lieutenant Colvin was deliberately indifferent to a risk of harm to Plaintiff's health. Because disputed issues of fact exist regarding the objective and subjective elements of the Eighth Amendment deliberate indifference to health and safety standard, both Plaintiff's motion for summary judgment and Defendants' motion for summary judgment are denied as to the claim that Lieutenant Colvin and Nurse Baker were deliberately indifferent to Plaintiff's health or safety during the restraint check on October 25, 2014.

### 3. Lieutenant Champion – October 25, 2014

Plaintiff concedes that on October 25, 2014 at 11:30 p.m., Lieutenant Champion ordered that his restraints be removed and permitted a nurse to clean his wounds as well as apply antibiotic ointment and bandages to the wounds. Plaintiff contends that Lieutenant Champion should not have reapplied the restraints to his wrists because she should have known that the restraints would ride up on his forearms again and cause him further injury.

The videotape of Lieutenant Champion's encounter with Plaintiff on October 25, 2014 reflects that she instructed officers to readjust and reapply the restraints in a way to keep the restraints from moving up Plaintiff's arms. *See* Ex. J, DVD, Oct. 25, 2014, at 0:25 – 1:18, 13:46 – 14:45. She further directed an officer to maintain one on one observation of Plaintiff in order to monitor his restraints and directed medical staff to monitor plaintiff's restraints and the injuries caused by the restraints. *See id.* at 7:20 – 7:50, 16:20 – 17:00. This evidence

23

demonstrates that Lieutenant Champion was not deliberately indifferent to a serious risk of harm to Plaintiff's health. She facilitated the treatment of Plaintiff's injuries to his forearms, directed staff members to reapply the restraints in a way to reduce the possibility of the restraints sliding up on Plaintiff's forearms and arranged for another officer and medical staff members to monitor Plaintiff's injuries and restraints. *See Farmer*, 511 U.S. at 844-45 (Nonetheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.... [P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.")

Plaintiff has submitted no evidence to contradict the video footage of the conduct of Lieutenant Champion during the restraint check on October 25, 2014 at 11:30 p.m. Accordingly, the Defendants' motion for summary judgment is granted on the ground that Lieutenant Champion was not deliberately indifferent to Plaintiff's injuries or health on October 25, 2014 and Plaintiff's motion for summary judgment is denied.

### 4. Lieutenant Hackett – October 26, 2014

On October 26, 2014 at approximately 1:00 a.m., Lieutenant Hackett visited Plaintiff's cell. Plaintiff complained that the handcuffs, including the black box device, had caused injuries to his wrists and/or forearms. Lieutenant Hackett removed the restraints and photographed the injuries that had been caused by

the application of the handcuffs to Plaintiff's forearms/wrists. Lieutenant Hackett then reapplied the restraints to Plaintiff's wrists. The parties do not dispute these facts.

Plaintiff contends that his continued confinement in the restraints constituted a serious risk of harm to his health. Lieutenant Hackett disputes the seriousness of Plaintiff's injuries. It is difficult to discern the nature of the injuries to Plaintiff's wrists/forearms from the black and white photographs taken by Lieutenant Hackett on October 26, 2014. *See* Ex. R at 104-07, Doc. No. 56-21. Lieutenant Hackett has not submitted a declaration or affidavit, an incident report or video footage documenting his interaction with Plaintiff on this date. In his declaration and deposition testimony, Plaintiff states that at the time that Lieutenant Hackett visited his cell to conduct a restraint check, the injuries to his forearms had become worse and more painful in the two-hour time period since Lieutenant Champion had removed and readjusted his restraints. *See* Pl.'s Decl. ¶¶ 30, 32-33, Doc. No. 77-3; Pl.'s Dep. 78:7 - 80:5; 134:1 – 135:1, Doc. No. 77-4.

The court concludes that material issues of fact exist with regard to whether Plaintiff suffered from a serious risk of harm to his health at the time Lieutenant Hackett removed and reapplied the restraints to his wrists in the early morning hours of October 26, 2014, and whether reapplication of the restraints without providing or facilitating the provision of any medical treatment or other relief constituted deliberate indifference to a serious risk of harm to Plaintiff's health. Because disputed issues of fact exist regarding both the objective and

subjective elements of the Eighth Amendment deliberate indifference to health standard, both Plaintiff's motion for summary judgment and Defendants' motion for summary judgment are denied as to the claim that Lieutenant Hackett was deliberately indifferent to Plaintiff's health during the restraint check at 1:00 a.m. on October 26, 2014.

### 5. Lieutenant Colvin and Nurse Baker – October 26, 2014

On October 26, 2014 at 10:00 a.m., Lieutenant Colvin and Nurse Baker visited Plaintiff's cell to perform a restraint check. Plaintiff alleges that Lieutenant Colvin ordered officers to remove his restraints and then ordered officers to reapply the restraints over his injured forearms and wrists. Plaintiff contends that Lieutenant Colvin exhibited deliberate indifference to a serious risk of harm to his health by ordering officers to reapply the restraints to his wrists because it was clear that the restraints would continue to ride up on his forearms and cause him further injury. Plaintiff claims that Nurse Baker should have indicated that his continued confinement in restraints was contraindicated due to his injuries.

The video footage submitted by the Defendants of the encounter between Plaintiff and Lieutenant Colvin on October 26, 2014 at 10:00 a.m. depicts officers removing the restraints from Plaintiff's wrists and Nurse Baker providing medical treatment to the injuries on Plaintiff's forearms. *See* Ex. K, DVD, Oct. 26, 2014, at 7:45 – 9:20; 12:20 – 14:40. When Nurse Baker finished treating Plaintiff's injuries, she advised Plaintiff that his injuries would continue to get worse if he remained

on in-cell restraints and suggested that Plaintiff agree to the strip search in order to facilitate removal of the restraints. *See id.* at 17:20 – 17:35.

Within an hour of this encounter, Lieutenant Colvin contacted Warden Erfe to report that he and Nurse Baker had observed the injuries to Plaintiff's forearms/s wrists and that Plaintiff had not complied with the strip search order requiring him to bend over at the waist and spread his buttocks. *See* Ex. R at 14, Doc. No. 56-21. Lieutenant Colvin recommended that Plaintiff be removed from the in-cell restraints to prevent further injury to Plaintiff's arms. Approximately, two hours later, pursuant to Warden Erfe's order, officers and Lieutenant Colvin transitioned Plaintiff to soft full stationary restraints and Nurse Baker cleaned and re-bandaged Plaintiff's wounds. *See* Ex. L, DVD, Oct. 26, 2014, at 1:14 to 27:55.

The observations made by Nurse Baker regarding Plaintiff's injuries and whether the injuries would get worse if he remained in in-cell restraints, as well as the recommendation by Lieutenant Colvin that Plaintiff be removed from in-cell restraints to prevent further injury to his wrists and arms, do not demonstrate deliberate indifference. Plaintiff has offered no evidence to contradict the video footage of the restraint check performed by Lieutenant Colvin and Nurse Baker or the documentary and video footage of his removal from in-cell restraints within several hours after Lieutenant Colvin informed Warden Erfe of his injuries. Accordingly, Defendants' motion for summary judgment is granted in favor of Nurse Baker and Lieutenant Colvin on the ground that they did not exhibit deliberate indifference to a serious risk of harm to Plaintiff's health during and

after their encounter with him on the morning of October 26, 2014 and Plaintiff's motion for summary judgment is denied.

### 6. Warden Erfe

Plaintiff claims that on October 27, 2014, he informed Warden Erfe that officers had provided him with "inadequate food" during his confinement on in-cell restraints. Compl. at 16 ¶ 75. The Second Circuit has held that the Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well[-]being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 14 (2d Cir.1983) (per curiam) (internal quotation marks omitted).

Warden Erfe argues that Plaintiff received meals during his confinement on in-cell restraints. The video footage submitted by the Defendants depicts Plaintiff eating several meals. *See* Ex. N, DVD, Oct. 26, 2014, at 5:10 – 13:55; Ex. P, DVD, October 27, 2014, at 10:00 – 10:35, 23:15 – 26:45. Additionally, Plaintiff has not alleged that the meals provided to him during his two and one-and-a-half-day confinement on restraints endangered his health. Thus, Plaintiff has not met the objective component of the Eighth Amendment standard.

Nor do the facts or evidence submitted by the Defendants suggest that on October 27, 2014, Warden Erfe had any prior knowledge of Plaintiff's concerns about the food or meals that had been provided to him during his confinement on in-cell restraints. Furthermore, as of that date, Plaintiff was no longer being held

in in-cell restraints and within hours of speaking to Warden Erfe, prison officials had removed all restraints from Plaintiff's limbs. As of that date, Plaintiff had been removed from in-cell restraints. *See* Ex. L, DVD, October 26, 2014; Ex. Q, DVD, October 27, 2019. Warden Erfe has demonstrated the absence of a material issue of fact in dispute with regard to whether he was deliberately indifferent to a serious deprivation of food. The Defendants' motion for summary judgment is granted on the ground that Warden Erfe was not deliberately indifferent to Plaintiff's need for nutritionally adequate food during his confinement on in-cell restraints and Plaintiff's motion for summary judgment is denied.

### C.  Excessive Force

Plaintiff alleges that at the time of his admission to Corrigan-Radgowski, Warden Erfe had a custom requiring officers to use the black box device when placing inmates on in-cell restraints. He contends that the use of the black box device was a punitive measure. Plaintiff alleges that Lieutenant Perez used excessive force against him by "forcefully" placing him in in-cell restraints, including the black box device, pursuant to Warden Erfe's custom.

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective

component to his claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotations and citation omitted).

1. **Warden Erfe – Custom of In-Cell Restraint Placement**

Plaintiff alleges that at the time of his confinement at Corrigan-Radgowski in October 2014, Warden Erfe knew that the application of the black box over an inmate's handcuffs as part of the in-cell restraint process was not typical and that it would subject an inmate to a substantial risk of harm and injury. Compl. at 17 ¶ 80. Despite this knowledge, it was Warden Erfe's custom to require officers to use the black box device when placing an inmate in in-cell restraints. *Id.* at ¶ 78. Plaintiff contends that the use of the black box device during his confinement on in-cell restraints constituted punishment rather than a legitimate safety and security measure.

Plaintiff has offered no evidence to support his allegation that Warden Erfe was aware prior to his placement in in-cell restraints on October 24, 2014 that such placement, including the black box device, would subject him to a serious risk or harm. Thus, there is no support for Plaintiff's conclusory contention that his placement in in-cell restraints, including the black box device, from October 24, 2014 to October 26, 2014 constituted punishment rather than an effort to restore order or to maintain the safety and security of the facility, inmates and staff members.

In *Shehan v. Erfe*, Case No. 3:15-CV-1315 (MPS), 2017 WL 53691 (D. Conn. Jan. 4, 2017), an inmate challenged prison officials' use of the black box device as part of his placement on in-cell restraints at Corrigan-Radgwoski after he refused to engage in a strip search requiring him to bend at the waist and spread

31

his buttocks to permit a visual inspection of his rectal area. *Id.* at *3.  In ruling on the defendants' motion for summary judgment, Judge Shea considered the safety and security concerns presented by an inmate who refuses to undergo a strip search as well as the need for force, the relationship between the need for force and the amount of force used and any efforts to temper the amount or type of force used and concluded that the use of in-cell restraints, including the black box device, in response to an inmate's refusal to obey a "lawful order to undergo a strip search does not" in and of itself "constitute excessive force." *Id.* at *8-9

Plaintiff challenges Warden Erfe's use of the same in-cell restraint system that includes the use of the black box device.  The Court is persuaded by the reasoning of Judge Shea in upholding the identical in-cell restraint custom/ practice/policy of using the black box device in addition to handcuffs, leg irons and a tether chain as not violative of the Eighth Amendment's proscription against excessive force.  Plaintiff has not presented any facts or evidence to suggest that the same reasoning does not apply to the facts of this case or to dispute the evidence and facts submitted by the Defendants in support of Warden Erfe's custom/practice/policy of using in-cell restraints, including the black box device, as authorized by Administrative Directive 6.5, in response an inmate's refusal to undergo a strip search.  *See* Defs.' Corrected L.R. 56(a)1 ¶¶ 3, 6, 11-13, 15-17, 19.  Thus, to the extent that the complaint includes a challenge to the in-cell restraints custom/practice/policy of Warden Erfe, Defendants' motion for summary judgment is granted on the ground that the use of in-cell restraints,

including the black box device, in response to an inmate's refusal to obey an order to be strip-searched upon entry into a prison facility does not in and of itself constitute excessive force.  *See Shehan*, 2017 WL 53691 at *9.[4]

### 2.    Lieutenant Perez – October 24, 2014

On October 24, 2014, as a newly admitted inmate at Corrigan-Radgowski, Plaintiff was required to participate in a visual body cavity strip search pursuant to State of Connecticut Administrative Directive 6.7(3)(Q) & (7)(A.  As part of the search, Lieutenant Perez ordered Plaintiff to bend over and spread his buttocks to permit an officer to make a visual inspection of his rectal area.  Lieutenant Perez gave Plaintiff several opportunities to comply with his order to complete this aspect of the strip search procedure.  When it was clear that Plaintiff would not comply with his order, at approximately 9:30 p.m., Lieutenant Perez placed Plaintiff in in-cell restraints, including the black box device, to protect the safety and security of the facility, staff members and other inmates.  Plaintiff does not allege that he had any further contact with Lieutenant Perez after 10:00 p.m. that evening.

Administrative Directive 6.7 defines a strip search as "a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair, body cavities []to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia."  Ex. E, Admin. Directive 6.7(3)(Q), Doc. No. 56-8.  Plaintiff has submitted no evidence to suggest

---

[4]  **Plaintiff's motion for summary judgment does not raise this excessive for**

that the visual body cavity strip search procedure employed by officials at Corrigan-Radgowski in October 2014, including Lieutenant Perez, did not comply with Administrative Directive 6.7(3)(Q).  Furthermore, the United States Supreme Court has upheld the use of the "bend and spread" form of strip search by prison officials.  *See Bell v. Wolfish*, 441 U.S. 520, 558 n.39 & 560-61 (1979) (upholding Fourth Amendment and Due Process challenges to strip search involving requirement that inmate, who was naked at the time, bend at the waist and spread his buttocks).

Compliance with all aspects of the strip search process, including a visual inspection of the rectal area to rule out the possibility that an inmate has dangerous contraband, including drugs, a weapon or a handcuff key, secreted in that area, is important to preserving the safety and security of the prison facility, prison staff members and other inmates.  *See* Erfe Decl. ¶¶ 11, 13, Doc. No. 56-5; *Florence v. Board of Chosen Freeholders*, 566 U.S. 318, 328 (2012) (recognizing that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities") (citing *Bell*, 441 U.S. at 546).  Plaintiff contends that he did not violate the Department of Correction's strip search policy set forth in Administrative 6.7, because he completed the cough and squat procedure that had been employed by officials at other prison facilities in the past.  It is undisputed, however, that Plaintiff did not complete the strip search procedure that Lieutenant Perez

claim.

ordered him to complete upon his admission at Corrigan-Radgowski on October 24, 2014, which involved bending at the waist and spreading his buttocks to permit a visual inspection of his rectal area.

State of Connecticut Department of Correction Directive 6.5 permits shift supervisors to use in-cell restraints to gain compliance with an order or to maintain order, safety and security in a prison facility. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. Given that Plaintiff had no legal basis to refuse to comply with the lawful order of Lieutenant Perez to complete the strip search process by bending over and spreading his buttocks to permit a visual inspection of his rectal area, the use of in-cell restraints was warranted under Administrative Directive 6.5.

Although handcuffs, leg irons and a tether chain connecting the leg irons and handcuffs are typically used when placing an inmate in in-cell restraints, the black box device, which may be fitted over the holes in the handcuffs, is also authorized as a restraint device that may be used in placing an inmate in in-cell restraints. *See* Defs.' Corrected L.R. 56(a)1 ¶¶ 11-15, Ex. D, Admin. Dir. 6.5(3)(F) & (8)(B)(2)-(3). The purpose of the black box device is to prevent an inmate from picking the locks securing the handcuffs. *Id.* ¶ 12, Ex. B, Erfe Aff ¶ 5.

Plaintiff argues that the decision by Lieutenant Perez to place him in in-cell restraints, including the black box device, was not based on a legitimate

penological objective because Lieutenant Perez was aware that the application of in-cell restraints, including the black box device, would cause him serious injuries, pain and sleep deprivation. *See* Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 5, Doc. No. 77-1. Plaintiff has submitted no evidence to support this allegation. Nor does the video footage of the events leading up to the decision by Lieutenant Perez to place Plaintiff in in-cell restraints or the application of the in-cell restraints on Plaintiff's ankles and wrists, including the black box device, suggest that Lieutenant Perez used the handcuffs, leg irons, tether chain or the black box device other than for their intended purposes. *See* Ex. H, DVD, October 24, 2014.

Plaintiff contends further that the decision to place him in in-cell restraints was not based on a valid security or safety concern or for the purpose of maintaining or restoring order and was unreasonable because Lieutenant Perez could have performed a controlled strip search instead. Administrative Directive 6.7(7)(D)(1) does not require a prison official to perform a controlled strip search if an inmate refuses to comply with a strip search as defined in section (3)(Q) of the Directive. Rather, it provides that a prison official *may* perform a controlled strip search in that situation. Choosing to initially confine Plaintiff in in-cell restraints rather than immediately performing a controlled strip search, which could potentially be more dangerous to the inmate or staff members, does not constitute the use of excessive force. *See* Erfe Decl. ¶¶ 17, 20, Doc. No. 56-5; *Shehan*, 2017 WL 53691, at *8-9. Warden Erfe has instructed officials at Corrigan-Radgowski to initially place an inmate in in-cell restraints to attempt to gain

compliance with an order prior to conducting a controlled strip search because of the potentially dangerous aspects of a controlled strip search. *See* Erfe Decl. ¶ 21.

The video footage of the application of in-cell restraints to Plaintiff's ankles and wrists and his placement in a cell in the restrictive housing unit on October 24, 2014 reflects that Plaintiff did not complain that the restraints were too tight. *See* Ex. H, DVD, October 24, 2014, at 4:30 – 14:38. Given the evidence that there was a legitimate safety and security reason for subjecting Plaintiff to a strip search upon his arrival at Corrigan-Radgowksi, the possibility that he might have secreted contraband in his rectal area, the decision by Lieutenant Perez to place Plaintiff in in-cell restraints for failing to comply with the order that he bend over and spread his buttocks as required by the facility's strip search policy, was not unreasonable and did not constitute excessive force. Thus, the motion for summary judgment is granted as to the Eighth Amendment excessive force claim asserted against Lieutenant Perez and Plaintiff's motion for summary judgment is denied.

3. <u>Lieutenant Champion – October 25, 2014</u>
<u>Lieutenant Colvin – October 26, 2014</u>

Lieutenants Champion and Colvin argue that their decisions to continue Plaintiff's placement in in-cell restraints on October 25, 2014 and on October 26, 2014 were made for valid safety and security reasons and due to Plaintiff's continued refusal to comply with the strip search order that he bend over and spread his buttocks to permit an officer to make a visual inspection of his rectal

area.  Plaintiff does not address this argument.

In the video footage depicting the interactions between Plaintiff and Lieutenant Champion on October 25, 2014 and Lieutenant Colvin on October 26, 2014, both Lieutenants made repeated inquiries as to whether Plaintiff would comply with the order requiring him to bend over and spread his buttocks as part of the visual body cavity strip search.  *See* Exs. J, K, L, DVDs, October 25, 2014 and October 26, 2014.  Lieutenant Colvin also explained to Plaintiff that the body cavity search is a visual search and would not involve a staff member touching or physically probing his rectal area.  *See* Ex. K, DVD, October 26, 2014, at 3:00 – 3:50; Ex. L, DVD, October 26, 2014, at 0:45 – 1:16.  Plaintiff repeatedly refused to engage in the visual body cavity strip search that Lieutenant Perez ordered him to undergo upon his admission to Corrigan-Radgowski on October 24, 2014.  *See* Exs. J, K, L, DVDs, October 25, 2014 and October 26, 2014.

Lieutenants Colvin and Champion contend that the safety and security concerns regarding possible contraband in Plaintiff's rectum or rectal area were still present during the restraint checks that occurred at approximately 10:00 a.m. on October 25, 2014, 11:30 p.m. on October 25, 2014, 1:00 a.m. on October 26, 2014 and 10:00 a.m. on October 26, 2014 because Plaintiff refused to engage in a visual body cavity search during those restraint checks.  They argue that Plaintiff's continued confinement on in-cell restraints, including the black box device, was necessary until approximately 1:30 p.m. on October 26, 2014, when Lieutenant Colvin removed Plaintiff from in-cell restraints and placed him in soft

full stationary restraints that did not include the black box device.

Plaintiff has offered no evidence to contradict the evidence submitted by Lieutenants Colvin and Champion regarding the safety and security concerns that continued to exist during their encounters with him on the evening of October 25, 2014 and on the morning of October 26, 2014  because he refused to undergo a strip search that involved him bending over and spreading his buttocks for a visual inspection of his rectal area by an officer.  Thus, Lieutenants Colvin and Champion have met their burden of demonstrating the absence of a material fact as the issue of whether a valid safety and security concern existed that warranted the use of force necessary to maintain Plaintiff's continued confinement on in-cell restraints as of 11:30 p.m. on October 25, 2014 and as of 10:00 a.m. on October 26, 2014.  The Defendants' motion for summary judgment is granted on the ground that the decision by Lieutenants Colvin and Champion to maintain Plaintiff on in-cell restraints during these two time periods did not constitute excessive force and the Plaintiff's motion is denied.

4. <u>Lieutenant Colvin – October 25, 2014</u>
<u>Lieutenant Hackett – October 26, 2014</u>

Lieutenant Hackett argues that the safety and security concerns regarding possible contraband in Plaintiff's rectum or rectal area were still present during the restraint check that he performed at approximately 1:00 a.m. on October 26, 2014.  Lieutenant Colvin does not address the restraint check that he performed on October 25, 2014 at approximately 10:00 a.m.  Lieutenant Hackett has chosen not to submit a declaration, affidavit, copy of an incident or other report or video

footage of his interaction with Plaintiff on October 26, 2014 at approximately 1:00 a.m. Although Lieutenant Colvin submitted incident reports documenting his interactions with Plaintiff on October 26, and 27, 2014, he did not submit an declaration, affidavit, incident report or video footage of his interaction with Plaintiff on October 25, 2014 at 10:00 a.m. Because neither Lieutenant Colvin or Lieutenant Hackett has provided evidence documenting their conduct during the restraint checks on October 25, 2014 and October 26, 2014, material issues of fact remain in dispute as to whether the safety and security concern that Plaintiff may have secreted contraband into the facility in his rectal area was still present and whether that safety and security concern warranted the use of force necessary to maintain Plaintiff on in-cell restraints. Lieutenant Hackett and Lieutenant Colvin are not entitled to judgment as a matter of law on the claims of excessive force based on their decisions to continue to confine Plaintiff on in-cell restraints from October 25, 2014 at 10:00 a.m. through and after 1:00 a.m. on October 26, 2014. The Defendants' motion for summary judgment and Plaintiff's motion for summary judgment are denied as to these Eighth Amendment excessive force claims.

5. <u>Warden Erfe – Placement on In-Cell Restraints</u>
<u>October 24, 2014 – October 26, 2014</u>

Warden Erfe does not dispute that as of approximately 9:30 p.m. on October 24, 2014, Lieutenant Perez made him aware of Plaintiff's confinement on in-cell restraints due to his refusal to comply with a strip search order requiring a visual inspection of his body cavities by a correctional officer. *See* Erfe, Decl. ¶

40

17, Doc. No. 56-5. An Incident Report prepared by Lieutenant Champion reflects that as of 11:50 p.m. on October 25, 2014, she made Warden Erfe aware that Plaintiff remained on in-cell restraints because he had refused to comply with the strip search order, she had observed injuries to Plaintiff's forearms/wrists, a nurse had treated those injuries and that she had supervised officers in removing and reapplying the restraints to Plaintiff's wrists and ankles in an attempt to prevent the restraints from moving up Plaintiff's arms and causing further injuries. *See* Ex. R at 15, Doc. No. 56-21.

Warden Erfe declares that during the morning of October 26, 2014, he received information from Lieutenant Colvin indicating that Plaintiff still had injuries to his forearms/wrists from the in-cell restraints. *See* Erfe, Decl. ¶ 26. In response to this information, Warden Erfe issued an order that Plaintiff be removed from in-cell restraints and placed on soft, stationary restraints to ensure that Plaintiff would not suffer any additional injuries. *See id.* ¶ 27. Plaintiff's placement on stationary restraints would also continue to protect the facility, inmates and staff members by preventing Plaintiff from accessing any contraband that he might have secreted in his body cavities. *See id.* ¶ 30. Within several hours of being notified, Lieutenant Colvin had transitioned Plaintiff to soft, stationary restraints. *See* Ex. R at 14, Doc. No. 56-21; Ex. L, DVD, October 26, 2014.

This evidence demonstrates that the decision to place Plaintiff in in-cell restraints was made for safety and security reasons due to Plaintiff's refusal to

41

undergo a strip search to permit a visual inspection of his rectal area for contraband and not for the purpose of causing Plaintiff pain or injury and that when it became apparent that Plaintiff was being harmed by his continued confinement in in-cell restraints, Warden Erfe ordered his removal from those restraints. Plaintiff has offered no evidence to contradict the documentary and video evidence submitted by Warden Erfe. Defendants' motion for summary judgment is granted as to the claim that Warden Erfe's authorization and approval of Plaintiff's initial placement in in-cell restraints, including the black box device, on October 24, 2014, and authorization and approval of Plaintiff's continued confinement in in-cell restraints until the afternoon of October 26, 2014 did not constitute excessive force. Plaintiff's motion for summary judgment is denied.

D.    **Placement on Full, Stationary Restraints**

The allegations in the complaint challenge only Plaintiff's placement on in-cell restraints. *See* Compl., Doc. No. 1. Plaintiff does not mention his placement or transition to full stationary restraints during the afternoon of October 26, 2014. *See id.*

In his memoranda in support of his own motion for summary judgment and in opposition to Defendants' motion for summary judgment, Plaintiff raises for the first time a challenge to his placement on full, stationary restraints on October 26, 2014. *See* Pl.'s Mem. Supp. Mot. Summ. J. at 9-10, Doc. No. 54-1; Pl.'s Mem. Opp'n Mot. Summ. J. at 7-8, Doc. No. 77-1. He contends that Lieutenant Colvin falsely accused him of harming himself while he was in in-cell restraints in an

42

effort to convince Warden Erfe to upgrade him to full stationary restraints. He further alleges that Warden Erfe unlawfully authorized his placement on therapeutic stationary restraints without an order from a physician. *Id.*

A plaintiff may not amend his or her complaint in a memorandum in opposition to the motion for summary judgment. *See Lyman v. CSX Transportation Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (summary order) (affirming district court's determination that it should not consider claims raised for the first time in opposition to summary judgment (citations omitted); *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 440 (S.D.N.Y. 2016) ("A party generally may not assert a cause of action for the first time in response to a summary judgment motion.") (internal quotation marks and citations omitted). Nor is the court inclined to permit Plaintiff at this late stage of the proceedings to add a claim that he did not notify the Defendants, at the time he filed the complaint, that he intended to pursue.[5] Plaintiff offers no explanation as to why this claim was not previously pled and he offers no argument as to why it should

---

[5] Furthermore, Plaintiff's allegations are not supported by the evidence submitted by Warden Erfe regarding his placement on full stationary restraints. Plaintiff was not placed on therapeutic restraints, defined as "[f]ull stationary restraints that are ordered by a psychiatrist or physician as part of a medical or mental health treatment." Ex. D, Admin. Directive 6.5(3)(O), Doc. No. 56-7. Rather, Warden Erfe issued the order to place Plaintiff in full stationary restraints pursuant to Administrative Directive 6.5(8)(B)(6) which permits an inmate to be transitioned to full stationary restraints if the inmate continues to be a threat to staff, self or others. *See id.*; Erfe Decl. ¶¶ 27-30, Doc. No. 56-5. Thus, it would be futile to permit Plaintiff to add these allegations regarding his placement on full stationary restraints. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing

be permitted at this point in the proceedings.  Thus, any challenge to Plaintiff's placement on full, stationary restraints is not before the Court.

     E.     <u>Qualified Immunity</u>

     Defendants argue that they are entitled to qualified immunity with regard to Plaintiff's claims that he was unlawfully placed in in-cell restraints.  Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  An official is entitled to qualified immunity unless (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view of the particular circumstances surrounding the case to be decided.  *See Pearson*, 555 U.S. at 236.

     Under the second prong, a right is clearly established if, at the time of the challenged conduct, it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks and alterations omitted).  "The dispositive question is 'whether the violative nature of *particular*

party.") (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

conduct is clearly established.'" Id. (emphasis added) (quoting *al-Kidd*, 563 U.S. at 742).

There is no requirement that a case has been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court has recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The claims that remain pending are as follows: the Eighth Amendment deliberate indifference to health claim against Nurse Baker and Lieutenant Colvin regarding Plaintiff's continued confinement on in-cell restraints as of 10:00 a.m. on October 25, 2014, the Eighth Amendment deliberate indifference to health claim against Lieutenant Hackett regarding Plaintiff's continued confinement on in-cell restraints as of 1:00 a.m. on October 26, 2014, the Eighth Amendment excessive force claim against Lieutenant Hackett regarding Plaintiff's continued confinement on in-cell restraints as of 1:00 a.m. on October 26, 2014 and the Eighth Amendment excessive force claim against Lieutenant Colvin regarding Plaintiff's continued confinement on in-cell restraints as of 10:00 a.m. on October 25, 2014.

The right to be free from the use of excessive force was clearly established

at the time that Lieutenants Hackett and Colvin continued Plaintiff on in-cell restraints.  *See Hudson*, 503 U.S. at 9-10; *Davidson v. Flynn*, 32 F.3d 27, 29-30 & n.1 (2d Cir. 1994) (holding that correctional officers' application of handcuffs too tightly to an inmate's wrists stated claim of excessive force in violation of the Eighth Amendment even if inmate did not incur serious injury).  An inmate's right to be free from a condition of confinement that subjects him or her to a risk of serious harm was also clearly established at the time that Lieutenants Colvin and Hackett and Nurse Baker continued Plaintiff on restraints.  *See Farmer*, 511 U.S. at 834, 847 (1994) (a prison official's act or omission" resulting in the denial of the minimal civilized measure of life's necessities" or "conditions posing a substantial risk of serious harm" violates the Eighth Amendment) (internal quotation marks and citation omitted).

The court has concluded that issues of material fact remain in dispute as to whether Plaintiff's injuries to his forearms/wrists or complaints of pain that he attributed to the in-cell restraints, including the black box device, during the morning of October 25, 2014 and early morning of October 26, 2014, constituted an objectively serious risk of harm to his health and whether Lieutenants Colvin and Hackett and Nurse Baker exhibited deliberate indifference by offering no relief from the application of restraints.  With regard to the excessive force claims against Lieutenants Hackett and Colvin there is an issue of material fact in dispute as to whether a legitimate safety or security concern still existed at the time that Lieutenant Colvin continued Plaintiff on in-cell restraints without

performing a restraint check on October 25, 2014 and as to whether a legitimate safety or security concern still existed at the time that Lieutenant Hackett removed and reapplied the restraints to Plaintiff's ankles and wrists on October 26, 2014. These issues of fact preclude a determination as to whether the Lieutenants Colvin and Hackett and Nurse Baker acted in a reasonable manner in continuing to confine Plaintiff on in-cell restraints. *See Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); *Alster v. Goord*, 745 F. Supp. 2d 317, 342 (S.D.N.Y. 2010) ("Here, "issues of fact exist concerning the severity of [Alster's] condition and the state of mind of the individual Defendants that are material to a determination of reasonableness.") (citation omitted).

The motion for summary judgment is denied on the ground that Lieutenant Colvin and Hackett are entitled to qualified immunity as to the Eighth Amendment excessive force claims asserted against them arising from the restraints checks performed on October 25, 2014 at 10:00 a.m. and on October 26, 2014 at 1:00 a.m. and denied on the ground that Nurse Baker and Lieutenants Colvin and Hackett are entitled to qualified immunity as to the Eighth Amendment deliberate indifference to health claims asserted against them arising from the restraint checks performed on October 25, 2014 at 10:00 a.m. and October 26, 2014 at 1:00 a.m.

<u>Conclusion</u>

Defendants' Motion for Summary Judgment, [ECF No. 56] is GRANTED as to the Eighth Amendment deliberate indifference to medical needs claim against Nurse Baker; the Eighth Amendment deliberate indifference to health claim and the Eighth Amendment excessive force claim against Lieutenant Champion, the Eighth Amendment deliberate indifference to health claim against Nurse Baker and Lieutenant Colvin arising from the restraint check performed at 10:00 a.m. October 26, 2014; the Eighth Amendment deliberate indifference to health claim related to a deprivation of clothing and bedding against Lieutenant Perez, the Eighth Amendment deliberate indifference to health claim related to a deprivation of food against Warden Erfe, the Eighth Amendment excessive force claim against Lieutenant Perez, the Eighth Amendment excessive force claim against Lieutenant Colvin arising from the restraint check at 10:00 a.m. on October 26, 2014; and the Eighth Amendment excessive force claims against Warden Erfe.

The Defendants' Motion for Summary Judgment, [ECF No. 56], is DENIED as to the Eighth Amendment deliberate indifference to health claim and the Eighth Amendment excessive force claim arising from the restraint check at 10:00 a.m. on October 25, 2014 against Lieutenant Colvin, the Eighth Amendment deliberate indifference to health claim arising from the restraint check at 10:00 a.m. on October 25, 2014 against Nurse Baker; and the Eighth Amendment deliberate indifference to health claim and the Eighth Amendment excessive force claim arising from the restraint check at 1:00 a.m. on October 26, 2014 against Lieutenant Hackett. The Plaintiff's Motion for Summary Judgment, [ECF No. 54]

is DENIED.

Thus, all claims have been dismissed against Lieutenant Perez, Lieutenant Champion and Warden Erfe.  The case remains pending against Nurse Baker, Lieutenant Colvin, Lieutenant Hackett and Nurse Barnas, who has not been served.

SO ORDERED this 30th day of March, at Hartford, Connecticut.

_____/s/_____
Vanessa L. Bryant
United States District Judge