**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KACEY LEWIS | : | |
| Plaintiff, | : | |
| | : | No. 3:17-CV-01764 (VLB) |
| v. | : | |
| | : | |
| SCOTT ERFE, ET AL. | : | August 10, 2020 |
| Defendant. | : | |
| | : | |

Ruling and Order on Plaintiff's Motion for Sanctions

In this excessive force and deliberate indifference bench trial, Plaintiff Kacey Lewis ("Plaintiff") moves for the Court to sanction remaining Defendants Lieutenant Hackett, Lieutenant Colvin, and Nurse Baker for spoliation of key evidence. [ECF Nos. 101 & 101-1 at 1]. Plaintiff seeks an adverse inference instruction to the jury that the defendants "willfully destroyed video surveillance footage of the October 24th, October 25th, and October 26th incidents for the purpose of depriving plaintiff of its use and that the jury must infer that, had the evidence been preserved, it would have corroborated plaintiff's testimony regarding these incidents." [ECF No. 101-1 at 26]. For the reasons below, the Court grants in part Plaintiff's motion.

I.    Background

On October 20, 2017, Plaintiff, an inmate within the custody of the Connecticut Department of Correction ("DOC"), filed a *pro se* Complaint against several DOC officials. [ECF No. 1]. He alleges that they violated his constitutional rights on October 24, 25, and 26 of 2014 at Corrigan Correctional Center by placing

1

him in in-cell restraints and by failing to properly treat the injuries he sustained from the restraints. *Id.*

Plaintiff claims—and Defendants do not deny—that footage from stationary cameras between October 24, 2014 and November 6, 2014 that would be relevant to his case was not preserved. [ECF No. 101-1 at 4]; [ECF No. 105-1].  The parties also agree that hand-held videos of the incidents giving rise to this lawsuit were preserved. [ECF No. 101-1 at 4]; [ECF No. 105-1].

II.    <u>Legal Standard</u>

Federal district courts have "broad discretion" in deciding whether and how to sanction parties for spoliation of evidence. *See West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999).

Until December 1, 2015, any party seeking an adverse inference instruction as a remedy for spoliation of evidence had to establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *see Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135 (2d Cir.2012)) (same).

On December 1, 2015, however, a new procedural rule went into effect regarding the obligations of parties to preserve electronically stored information ("ESI"):

(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in

the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

>    (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>    (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>>        (A) presume that the lost information was unfavorable to the party;
>>
>>        (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>>        (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37.

"The December 1, 2015 Amendments… made a significant change to the standards governing spoliation issues… [by] requir[ing] a showing that the destroying party "acted with the intent to deprive another party of the information's use in the litigation" for the Court to dismiss an action, enter default judgment, or "instruct the jury that it may or must presume the [lost] information was unfavorable to the party." *Learning Care Grp., Inc. v. Armetta*, 315 F.R.D. 433, 439–40 (D. Conn. 2016). "Prior to the 2015 amendment, a party need only have shown that the destroying party was negligent in order to have the benefit of an adverse inference instruction." *Coan v. Dunne*, 602 B.R. 429, 437 (D. Conn. April 16, 2019).

Plaintiff argues that the previous Second Circuit standard applies because the events underlying this case occurred in 2014. [ECF No. 101-1 at 13-14]. The Court is not persuaded. In transmitting the proposed new Rule 37(e) to Congress

in April 2015, Chief Justice Roberts included an order that "the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced, and, insofar as just and practicable, all proceedings then pending." 2005 U.S. Order 0017. This case was commenced on October 20, 2017, [ECF No. 1] and so it is governed by the Rule.

### III.   Analysis

#### A. *Bench Trial*

First, Defendants argue that the Court should find this motion moot because this case is a bench trial, not a jury trial, so the Plaintiff's request for the Court to issue an adverse inference instruction is moot. [ECF No. 105 at 1 n. 1]. The Court disagrees. First, even if the Court does not impose an adverse inference, the Court may impose other sanctions. *See* Fed. R. Civ. P. 37(e)(1). Second, pursuant to Federal Civil Rule of Procedural 39(b), the Court could still convert this trial into a jury trial, even though, pursuant to Federal Civil Rule of Procedure 38, the parties have no right to a jury trial at this stage. *See Winchester Indus., Inc. v. Sentry Ins.*, 630 F. Supp. 2d 237, 240 (D. Conn. 2009) (citing *McCarthy v. Bronson*, 906 F.2d 835 (2d Cir. 1990), *aff'd,* 500 U.S. 136 (1991).

#### B. *Obligation to preserve evidence*

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). This obligation persists under Rule 37: "Many court

4

decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve." Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendment of Subdivision (e).  "[I]n the correctional context, a duty to preserve may attach when an inmate is in a fight or when an inmate files grievances about the incident."  *Barnes v. Harling*, 368 F. Supp. 3d 573, 607 (W.D.N.Y. 2019) (collecting cases).

Here, it is undisputed that Plaintiff made his complaints known. The day of the incident, Kate Barnas, who has not yet been served, wrote a Medical Incident Report stating, "[Inmate] threatens to sue for nerve damage." [ECF No. 38-10]. On November 12, 2014, just over two weeks after the incident, Plaintiff wrote and submitted an Inmate Request Form to Mary Marto, Health Services Administrator at Corrigan Correctional Center, complaining that Defendant "Nurse Sarah failed to properly check [the] restraints on October 25, 2014." *See*  [ECF No. 101-1 at 7] (citing [ECF No. 38-1]). The same day, he submitted an "Administrative Remedy Form," naming Defendant "nurse Sarah", alleging nurses did not conduct an actual physical "restraint check" to determine if the restraints were too tight, and as a result of such failure, Plaintiff was seriously injured and subjected to lingering pain. *Id.* (citing [ECF No. 38-1 at 8]. The same day, he also wrote and submitted Inmate Request Forms to Warden Scott Erfe, complaining about the incidents underlying this complaint, and about Defendants Hackett and Colvin. *Id.* at 8 (citing [ECF No. 38-1 at 3-7]). On November 19-21, he wrote and submitted Administrative Remedy forms regarding the incidents underlying this action and complained

against Defendants Hackett and Colvin. *Id.* (citing [ECF No. 38-1 at 9-17]).  At the time, the relevant system at Corrigan preserved video for up to 30 days, [ECF No. 105-1 at ¶¶5-6], so Plaintiff's remedy requests fell well within this preservation period.  The subject matter of these requests and remedies should have been sufficient to give notice of a potential lawsuit.  Finally, other footage of the incidents was preserved, *see* [ECF No. 38-1 at 19], demonstrating that Defendants were aware that litigation might result. Therefore, the Court finds that a duty to preserve did attach.

It is also undisputed the obligation to preserve encompassed the stationary camera footage of the defendants entering and exiting Plaintiff's cell, as the obligation to preserve adheres to all potentially relevant footage. *See  Taylor v. City of New York*, 293 F.R.D. 601, 616 (S.D.N.Y. 2013) (granting adverse inference instruction against defendant corrections officer who retained only eight minutes of surveillance footage pertaining to an inmate assault and not the preceding three hours footage that would also be potentially relevant to plaintiff's claims).

### C. *Reasonable steps to preserve the relevant footage*

Under the old standard, "any party seeking an adverse inference instruction as a remedy for spoliation of evidence had to establish… 'that the party having control over the evidence had an obligation to preserve it at the time it was destroyed.'" *Thomas v. Butkiewicus*, No. 3:13-CV-747 (JCH), 2016 WL 1718368, at *7 (D. Conn. Apr. 29, 2016) (quoting *Residential Funding Corp*, 306 F. 3d at 107). The Second Circuit has not yet addressed whether this requirement still exists under the new Rule 37(e), but "district courts within this Circuit have denied

requests for sanctions against defendant corrections officers who had no control over the recordings." *Barnes,* 368 F. Supp. 3d at 609 (collecting cases).

The text of Rule 37(e) states that a court may take order remedial measures if "a party failed to take reasonable steps to preserve [the evidence]." The commentary to the Rule points to two questions for the Court to consider:

> "The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation.
>
> Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve it. *For example, the information may not be in the party's control*… Courts may, however, need to assess the extent to which a party knew of and protected against such risks.

Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendment of Subdivision (e) (emphasis added).

Here, the remaining Defendants did not have control over the footage. in 2014 when this incident occurred, Corrigan utilized NICE vision software on all stationary cameras. [ECF 105-1 (Ex A: Decl. by Kenneth Wright) at ¶ 5, 6]. The NICE vision software only retained video recording for up to 30 days, and only certain correctional staff were authorized access to the NICE vision software at Corrigan in order to preserve video recordings, none of whom were any of the remaining defendants. *Id.* at ¶¶ 6-7, 9. Indeed, access to the NICE vision software at Corrigan in 2014 was limited to only authorized individuals which included the Warden, the Deputy Wardens, the Captain/Shift Commander, and members of Corrigan's intelligence unit, if necessary. *Id.* at ¶ 7.

But the Court notes that an individual who does not control or maintain footage may still take reasonable steps to preserve it if she is aware of the grievances:  she may ask the person in control of the footage to retain it, or she may ask the person in control of the copy if she may have a copy of it and keep for her own records. Here, because some video was preserved and Plaintiff filed grievances against Defendants, there are sufficient facts on the record to suggest that Defendants had both the impetus and the ability to see to it that the video was preserved by their colleagues who had control over the video. Therefore, since the surveillance video was not preserved, there is some evidence that Defendants failed to take reasonable steps that they could have taken.

### D. *Prejudice*

But, if the defendants did not have control over the footage, then they could not have "acted with the intent to deprive another party of the information's use in the litigation." Fed R. Civ. P. 37(e)(2). So, the Court cannot impose the harsher Rule 37(e)(2) sanctions, which include: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." The Court may only "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The Court has discretion in determining which party has the burden of showing prejudice. Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendment of Subdivision (e)(1) (emphasis added).

8

Here, the Court finds prejudice. Specifically, Mr. Lewis argues that the October 25, 2014 recording would show that Lieutenant Colvin had stood at the doorway of the cell during a morning restraint check, which would corroborate Mr. Lewis's disputed testimony and support his claim of deliberate indifference against Lieutenant Colvin. *See* [ECF No. 101 at 35]. To cure this prejudice, the Court will allow the parties to present evidence and argument regarding the loss of the surveillance footage.  The Court will determine the evidentiary impact of the failure to preserve the video, including any effect that the failure to preserve the video may have on the credibility of the Defendants to the extent they had the ability to affect its preservation and failed to make a reasonable attempt to assure its preservation.

### E. Conclusion

For the reasons outlined above, the Court grants in part Plaintiff's motion. The Court will allow the parties to present evidence and argument regarding the loss of the surveillance footage.  The Court will determine the evidentiary impact of the failure to preserve the video, including any effect that the failure to preserve the video may have on the credibility of the Defendants to the extent they had the ability to affect its preservation and failed to make a reasonable attempt to assure its preservation.

SO ORDERED.

_____/s/_____
Hon.  Vanessa L. Bryant
United States District Judge

Dated: August 10, 2020 at Hartford, Connecticut